253 N.J. Super. 289 (1992)
601 A.2d 761
DANIEL USLAR, PLAINTIFF-APPELLANT,
v.
MARY BETH USLAR, DEFENDANT-RESPONDENT-CROSS-APPELLANT,
v.
RANDOLPH MFG. CORP., LAKESIDE PRODUCTS, INC., SUSSEX WIRE, INC., DD & R PARTNERS, A PARTNERSHIP, G. DAVID USLAR, GEORGE USLAR, RENEE USLAR AND ROBIN NORTH, THIRD PARTY DEFENDANTS-CROSS-RESPONDENTS, AND JOHN DOE, INC. (FICTITIOUS), DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1991.
Decided January 23, 1992.
*291 Before Judges KING, DREIER and BROCHIN.
John H. Schmidt, Jr. argued the cause for appellant (Lindabury, McCormick & Estabrook, attorneys; John H. Schmidt and Marlene M. Browne, on the brief).
Edward J. Gilhooly argued the cause for respondent-cross-appellant (Edward J. Gilhooly, on the brief).
Arthur D. Fialk argued the cause for third party defendants-respondents (Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan, attorneys; Arthur D. Fialk and S. Philip Klein, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
The parties have cross-appealed in this matrimonial action which was extended by a third-party complaint to include three corporations and a partnership in which the plaintiff husband had an interest, as well as plaintiff's brother, father, mother, and business associate. Plaintiff appeals from the principal determinations of Judge Herr who found that plaintiff was the owner or beneficial owner of substantial disputed interests in the corporations and partnership, and who determined that the individual third-party defendants had participated in a course of conduct to shield these assets from plaintiff's claims. Plaintiff also disputes the valuation of the property and the amount of counsel fees awarded. Defendant cross-appeals from the failure of Judge Herr to state definitively that plaintiff was a 75% *292 stockholder of Randolph Mfg. Corp. and a 50% partner in D.D. & R. Partners. Although Judge Herr made such a finding and based her division of assets upon such an assumption, rather than enter a judgment to this effect against the third-party defendants, she dismissed the third-party complaint after establishing the payments defendant must make to plaintiff.
We dwell on the issue of inclusion or exclusion of the corporate and partnership property, because plaintiff, more than a month prior to filing his appellate brief, filed for personal bankruptcy. (He and his attorneys neglected to note this fact in his appellate brief). If Judge Herr's order stands, plaintiff is indebted to defendant in the amount of $289,765, to be paid from his business interests as well as his half of the equity in the marital home and various personal property. However, if plaintiff's bankruptcy estate does not include the interests determined by Judge Herr, this estate in the bankruptcy proceeding might be inadequate to satisfy the marital judgment and defendant's other creditors. If an order is entered imposing a constructive trust, the appointment of a receiver, or other relief originally demanded by defendant, plaintiff's assets in the bankruptcy proceeding could be sufficiently augmented so that the petition could be discharged or equivalent action taken by the bankruptcy judge.
At the outset, we are somewhat in a quandary how to proceed because the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, might be read as staying the continuation of this appeal. The trial judge's judgment had been entered June 18, 1990, and the petition in bankruptcy was filed April 15, 1991. The appeal by plaintiff sought to overturn those aspects of the trial judge's decision which could be viewed as augmenting plaintiff's estate. Thus perceived, we can understand that this appeal could affect the bankrupt estate, and might be stayed. We understand from counsel that the Bankruptcy Court is aware of this appeal and has expressed interest in its outcome. We are loathe, however, to tread upon the *293 jurisdiction of the Bankruptcy Court. And we note that our decision does not in any way actually deplete the bankrupt's estate. Rather, it not only confirms Judge Herr's determinations, but also directs further implementation, if necessary, against the third-party defendants. We therefore do not envision our decision as inimical to the purposes of the automatic stay.
We recognize, however, that our view of bankruptcy jurisdiction may not be the same as that of the Bankruptcy Judge. We therefore preface our determination with a statement of its conditional nature. This decision shall not be implemented unless or until either (1) defendant shall present this opinion to the Bankruptcy Judge to have the automatic stay lifted with respect to the prosecution of this appeal, or for the judge to abstain in the exercise of the bankruptcy jurisdiction over this appeal, with a suitable order to be filed in this proceeding; or (2) the bankruptcy petition is withdrawn or dismissed. With that express understanding, we will proceed to pass upon the merits of the appeal.
The trial in this matter was conducted for nine days between September 18, 1989 and February 13, 1990. The parties were granted mutual divorces on the complaint and counterclaim. The value of the marital home was established at $148,000, and was awarded to plaintiff who had resumed residence there, subject to his paying defendant one-half of the equity after deduction for the outstanding balance of the mortgage.
With regard to plaintiff's commercial investments, and notwithstanding the short duration of this childless marriage, defendant was awarded substantial shares of both Randolph Mfg. Corp. and DD & R Partners. Although substantial time was spent proving the respective interests in DD & R Partners, the partnership equity was not of great monetary significance. The proofs, however, gave the judge significant insight into the credibility of the parties and witnesses. The 40% of plaintiff's *294 equity awarded to defendant was valued at $9,000, to be paid on or before June 1, 1990. Randolph Mfg. Corp. was valued by defendant's expert, at $800,000, and this valuation was accepted by the court. Judge Herr concluded that notwithstanding plaintiff's claim of only a one-third ownership in the corporation, he in fact owned 75%, a determination which we uphold herein. Thus, plaintiff's interests in Randolph were valued at $600,000, less a $30,000 value of his interest in the corporation in 1984 when the parties were married, or a net distributable value of $570,000.
Judge Herr determined that defendant was entitled to a 50% distribution of plaintiff's Randolph Mfg. Corp. interest, since she had forfeited a substantial New York fashion career when she married plaintiff and moved to New Jersey.[1] The judge further specifically found that defendant had both worked in plaintiff's business and had "attempted to establish herself in the interior design business." She was an "energetic partner with plaintiff in the marital enterprise." Thus she received half of the net value of Randolph Mfg. Corp. in the amount of $285,000. The court acknowledged that the asset was not liquid and therefore directed a specific payment schedule: $100,000 not later than December 31, 1990; $100,000 not later than December 31, 1991; and $85,000 not later than December 31, 1992; all payments to be without interest if paid on time.
Implicit in this determination was the ownership by plaintiff of interests held in the name of two other corporations, defendants Sussex Wire Inc. and Lakeside Products Inc., controlled by members of plaintiff's family. We need not repeat in our opinion the detailed analysis of Judge Herr. Suffice it to say *295 that there was substantial evidence in the record to support her determination, and we accept it. Similarly, with respect to the DD & R partnership interest, Judge Herr was forced to sift through conflicting testimony and documentary evidence. Again, the record supports her determination, especially when we factor into our review her scathing determinations of credibility against plaintiff and his family.
Our one disagreement with Judge Herr, and we understand that this issue made little difference prior to the bankruptcy petition, is the failure to make binding upon the third-party defendants her determinations concerning the ownership of the partnership interests and corporate stock. The judgment now should establish this interest. We therefore vacate the dismissal of the third-party complaint and remand the matter to Judge Herr to enter the appropriate order declaring the respective beneficial ownership interests in the corporate and partnership entities on the theory of a constructive trust. See Stretch v. Watson, 5 N.J. 268, 279, 74 A.2d 597 (1950). Judge Herr determined that plaintiff had earned these interests, and if legal title remained in the name of family members, they can be deemed to hold the interests in trust for plaintiff, he being the beneficial owner. See Painter v. Painter, 65 N.J. 196, 212-213, 320 A.2d 484 (1974); Rector v. Rector, 62 N.J. 577, 579-580, 303 A.2d 881 (1972) (establishing trust as security, rather than for distribution purposes); Callahan v. Callahan, 142 N.J. Super. 325, 329-331, 361 A.2d 561 (Ch.Civ. 1976) (constructive trusts imposed on options held by husband); Tucker v. Tucker, 121 N.J. Super. 539, 547, 298 A.2d 91 (Ch.Div. 1972) (express trusts found distributable where family was living on the income). By our finding that the constructive trust should be definitely stated, we by no means intend to question Judge Herr's decision to order payment in cash rather than in an in-kind distribution of the stock or partnership interests. See Borodinsky v. Borodinsky, 162 N.J. Super. 437, 442, 393 A.2d 583 (App.Div. 1978).
*296 Plaintiff also contends that defendant had no entitlement to the rehabilitative alimony awarded by the trial judge. There is no question of our jurisdiction to pass upon this issue, notwithstanding the pendency of the bankruptcy proceeding. The Bankruptcy Code in 11 U.S.C. § 362(b)(2) exempts from the automatic stay provision "the collection of alimony, maintenance, or support from property that is not property of the estate." Furthermore, 11 U.S.C. § 523(a)(5) renders non-dischargeable a bona fide claim for unpaid alimony.
Judge Herr determined that although defendant was now working as a legal secretary rather than resuming her fashion-related career, she should have an opportunity to return to the career that had been interrupted by her marriage. N.J.S.A. 2A:34-23 sets forth criteria for the award of alimony. While nine factors are stated in the statute, the tenth ("any other factors which the court may deem relevant") shows the list to be non-exclusive. Judge Herr sought to facilitate defendant's return to her former career if she so desires, but principally he sought to provide a continuation of income until defendant would receive her equitable distribution. The award of $1,200 per month ($14,400 per year) would on average approximately make up for the loss of income defendant might reasonably expect on the investment of the lump sum periodic payments required from plaintiff, especially since the court awarded no interest to defendant on these lump sum payments unless plaintiff defaulted. As Judge Herr noted, "plaintiff's income of $100,000.00 a year is adequate to support his own needs and yet cover a safety net for defendant." The alimony award fell well within her discretion, and we see no error in this award.
Plaintiff next claims that the court mistakenly awarded $52,416 in attorney's fees for defendant, less a $12,000 credit for a pendente lite award. The judge balanced the equities in arriving at her award. She noted an excess hourly charge due to defendant's attorney's lack of experience in matrimonial law, and reduced the requested fee by 40%. However, she also *297 found that defendant's cost had been augmented primarily due to plaintiff's lack of candor and good faith, a proper consideration insofar as it affected defendant's necessary efforts. Cf. Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971). The fact that plaintiff may be required to resort to credit to satisfy these fees is of no moment. It merely means that he can spread the impact of the fees over more than one year. Considering the credibility determinations in this case and plaintiff's active frustration of defendant's efforts to assemble the information needed to prosecute her claim, the evident ability of plaintiff and the relative inability of defendant to pay these fees, the Williams factors were satisfied. See also Darmanin v. Darmanin, 224 N.J. Super. 427, 430-432, 540 A.2d 913 (App. Div. 1988), stating that the bad faith of the party charged is not a factor, but the good faith of the party forced to react is a proper consideration. We will not disturb the attorney's fee award.
Lastly, plaintiff contends that he should have been given a credit for the mortgage and related payments he made after defendant vacated the marital home and he took up residence. The couple purchased the home in Pittstown, New Jersey in March of 1986. Following the closing on June 11, 1986, they resided in the marital home which, according to Judge Herr, had been selected in anticipation of the move of Randolph Mfg. Corp. to the Phillipsburg-Easton area. Plaintiff vacated the marital home in September 1987. Two months later defendant left, and plaintiff returned in January 1988. He has sought reimbursement only for the period that he was in residence, citing Tucker v. Tucker, 121 N.J. Super. 539, 298 A.2d 91 (Ch.Div. 1972). Each case must be decided, however, upon its own facts. Defendant takes no real issue with a possible credit, but asserts that it is de minimis, considering the magnitude of the other issues between the parties.
Plaintiff has raised the issue, and we have examined it. We find there is merit to his claim, but solely for her share of the *298 mortgage principal reduction. The balance of his expenditures were in the nature of payments for use and occupancy during his residence. They in no way benefitted defendant. By way of modification of the judgment, we note that the $25,039.80 payment for defendant's interest in the marital home, required on June 1, 1990, was computed in conformity with the judge's direction that the mortgage balance "as of May 1, 1990" would be subtracted from the adjudicated value of $148,000. Since plaintiff's principal reduction of the mortgage from January 1988 through May 1990 should have inured solely to his benefit, the balance on the earlier date should have been used. As we are remanding this matter for the entry of appropriate orders concerning the third-party defendants, we request that Judge Herr make this minor modification in the payment awarded to defendant for the interest in the marital home.[2] Our direction concerning this adjustment is, of course, also subject to the decision of the Bankruptcy Judge.
Subject to the preliminary caveat we have given concerning the subordination of this decision (with the exception of the alimony portion) to the jurisdiction and decision of the Bankruptcy Court, and with the further exception of the minor mortgage principal adjustments we have made herein, we affirm the decision of Judge Herr substantially for the reasons set forth in her comprehensive letter opinion dated April 23, 1990, we affirm the order implementing the same, and we affirm her supplemental award of counsel fees.
NOTES
[1] Defendant's career had not yet become lucrative, but Judge Herr accepted the proposition that defendant had worked for years in establishing a following and was "recognized as a `comer' in that competitive but glamorous world."

While we might question the 50% distribution in the light of a short-term marriage, the issue is committed to the trial judge's discretion. Since Judge Herr explained her reasoning and had an adequate basis for her sound decision, we will not interfere.
[2] In the event the bankruptcy has affected either the payment for distribution of the marital home, or defendant's responsibility for the mortgage, the court may reconsider this issue after the final decision of the bankruptcy judge.