782 A.2d 447 (2001)
344 N.J. Super. 399
The TROCKI PLASTIC SURGERY CENTER, Plaintiff-Respondent,
v.
Thaddeus BARTKOWSKI, Sr. and Ann C. Bartkowski-Parisi, jointly, severally, and in the alternative, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2001.
Decided October 17, 2001.
*448 Thaddeus J. Bartkowski and Ann C. Bartkowski-Parisi, appellants pro se.
Todd A. Nehmad, for respondent (Mr. Nehmad, on the brief).
Before Judges WEFING, CIANCIA and PARRILLO.
The opinion of the court was delivered by PARRILLO, J.A.D.
Defendants Thaddeus Bartkowski, Sr., and Ann C. Bartkowski-Parisi live in Pennsylvania and own a summer home in Atlantic County, New Jersey, where their minor child underwent emergency surgery at Shore Memorial Hospital for a lacerated wrist on July 13, 1993. Defendants were later billed $1860 for medical services rendered their son that they failed to pay despite having been reimbursed $1466 by *449 the husband's health insurer, Blue Cross/Blue Shield. Consequently, the medical provider, plaintiff The Trocki Plastic Surgery Center, sued defendants and, after a non-jury trial, obtained judgment against them for $1860 in principal amount due for services rendered, plus $2188.32 in interest, $1086 in attorneys fees, and $53 in costs. The trial judge also granted plaintiff's post-judgment motion assessing defendants $2249 in additional counsel fees and costs as well as "any and all continuing counsel fees" pursuant to the frivolous litigation statute, N.J.S.A. 2A:15-59.1.
Defendants appeal both determinations. We affirm the underlying judgment but reverse the award of frivolous-proceeding attorney's fees.
In challenging the underlying judgment, defendants raise the following issues:
I. THE PLAINTIFF FAILED TO PRODUCE EVIDENCE OF THE REASONABLENESS OF THE MEDICAL BILL OR THE REASONABLENESS OF MEDICAL SERVICES RENDERED OR ANY INFORMATION CONCERNING THE TYPE OF SERVICES RENDERED WHICH WAS THE BASIS OF THE MEDICAL BILL.
II. THE LOWER COURT ERRED IN FINDING DEFENDANT THADDEUS BARTKOWSKI RESPONSIBLE FOR INTEREST AND ATTORNEY'S FEES.
III. THE LOWER COURT ERRED IN AWARDING INTEREST AT THE RATE OF 12% PER ANNUM AGAINST THADDEUS BARTKOWSKI FOR THE REASON THAT THERE IS NO EVIDENCE OF AN AGREEMENT.
IV. THE LOWER COURT ERRED IN AWARDING ATTORNEY'S FEES AGAINST DEFENDANT ANN C. PARISI-BARTKOWSKI.
V. THE LOWER COURT ERRED IN AWARDING ATTORNEY'S FEES AND INTEREST AGAINST ANN C. PARISI-BARTKOWSKI PURSUANT TO THE AUTHORIZATION.
VI. THE LOWER COURT ERRED IN AWARDING INTEREST FROM JULY, 1993.
VII. THE LOWER COURT ERRED IN REFUSING TO FIND THE AUTHORIZATION AGREEMENT UNCONSCIONABLE AND A CONTRACT OF ADHESION.
VIII. THE LOWER COURT HAD NO JURISDICTION OVER THE DEFENDANTS AND THE STATUTE OF LIMITATIONS BARS RECOVERY.
We have considered each of these issues in light of the record, the applicable law, and the arguments of counsel and defendants, and we are satisfied that none of them is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(A) and (E). We add, however, the following comments.
Ample credible evidence supports the reasonableness of the medical bill. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974) ("[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence.") Surgery on the minor child was performed in response to an emergency call by the parents who never thereafter complained of the quality of the services rendered or the reasonableness of the ensuing bill. Indeed, defendants accepted the medical insurer's reimbursement of seventy-seven percent of the charge.
Defendants were legally responsible as parents of the minor for payment of *450 this bill. See Grotsky v. Grotsky, 58 N.J. 354, 356, 277 A.2d 535 (1971); Martinetti v. Hickman, 261 N.J.Super. 508, 512, 619 A.2d 599 (App.Div.1993). They were also contractually obligated by virtue of the "Authorization/Responsibility Agreement" executed by the wife, defendant Bartkowski Parisi, shortly after the surgery. That agreement holds the parent/guardian responsible for the cost of services rendered, for interest in the event payment is not timely made, and for attorney's fees should the matter proceed to collection, as actually occurred here.
In the agreement, defendant Bartkowski-Parisi lists her co-defendant husband's medical insurer, Blue Cross/Blue Shield, and his name, Thaddeus Bartkowski, as the subscriber, along with his identification number. The agreement she executed assigned to plaintiff all payments from this health insurance carrier for services rendered her son. That her husband did not co-sign is of no consequence because (1) under the circumstances, he was a disclosed principal and Mrs. Bartkowski-Parisi had the apparent, if not actual, authority to contract in her husband's name, Restatement (Second) of Agency § 22(b) (1958); (2) the services contracted for on behalf of the couple's minor son were necessary, Jersey Shore Medical Center v. Estate of Baum, 84 N.J. 137, 151, 417 A.2d 1003 (1980); Darmanin v. Darmanin, 224 N.J.Super. 427, 431-32, 540 A.2d 913 (App.Div.1988); Saks & Co. v. Bennett, 12 N.J.Super. 316, 318, 79 A.2d 479 (App.Div.1951); and (3) defendant Bartkowski received and accepted the insurance carrier reimbursement that the agreement otherwise assigned to plaintiff. And from the perspective of his wife, the fact that she may have failed to fully comprehend the meaning of the contract is of even less moment in the absence of any claim of duress, fraud, or coercion in the execution of the agreement.
Equally unpersuasive is defendants' alternative claim that prejudgment interest only accrues after June 1995i.e. when the bill that they say they first received in October 1995 indicated payment was then only four months overdue. Suffice it to say, the interest and attorney's fees included in the underlying judgment were calculated in accordance with the terms of the agreement and were reasonable pursuant to applicable law. Further, as concerns the former, defendants received three separate payments from Blue Cross/Blue Shield and allowed the first two payments to expire before depositing the third, which was never turned over to plaintiff. After waiting, but failing, to receive payment, plaintiff, as was customary, sent several copies of invoices to defendants. Under the circumstances, it was entirely reasonable to assess defendants prejudgment interest in the amount calculated by the agreement and accruing from the date the services were rendered.
The balance of defendants' challenge to the underlying judgment requires even less discussion. Defendants, out-of-state residents, apparently accepted service of process by uncertified mail and, in any event, waived the claimed defect by their voluntary appearances. R. 6:2-3(e); Allen B. DuMont Labs., Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 302-03, 152 A.2d 841 (1959). Finally, the lawsuit filed on July 10, 1997, was within six years of the date of surgery on July 14, 1993, and hence not barred by the applicable statute of limitations.
We, therefore, affirm the underlying judgment. However, for the following reasons, we reverse the trial judge's post judgment order awarding, under the frivolous litigation statute, additional attorney's fees of $2249 and allowing continuing counsel fees, prospectively, upon application.
*451 At the outset, we note that plaintiff improperly moved for attorney fees on grounds of frivolousness under N.J.S.A. 2A:15-59.1. The applicability of the frivolous-suit statute is limited to parties only. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 626 A.2d 425 (1993) ("We decline to extend the statute to apply to the award of counsel fees and costs against attorneys.") On the other hand, effective September 1996, attorney liability for frivolous proceeding is governed by R. 1:4-8. See Pressler, Current N.J. Court Rules, Comment R. 4:42-9(a)(8) (2002) (discussing awards of attorneys fees as to frivolous claims). This rule subjects not only attorneys but pro se litigants, such as defendants here, to the attorney fee sanction prescribed thereunder. R. 1:4-8(f). In other words, as a reminder to pro se parties that they are under the control of the court in the prosecution of their cause, pro se parties are regarded as lawyers for purposes of this rule. See Venner v. Allstate, 306 N.J.Super. 106, 112, 703 A.2d 330 (App.Div.1997).
Governed by the standards prescribed in R. 1:4-8 for the awarding of counsel fees for frivolous litigation, plaintiff's application fails for a number of reasons. First, it was not filed in a timely manner. R. 1:4-8 governs the procedure for fee applications both against parties under the statute and against lawyers under the rule. See R. 1:4-8(b)(3) and -8(f); Pressler, Current N.J. Court Rules, Comment on R. 1:4-8 (1996). R. 1:4-8(b)(2) expressly fixes the time for filing fee applications to which it is applicable:
Time for Filing; Attorney's Fees. A motion for sanctions shall be filed with the court prior to the entry of final judgment, notwithstanding the provisions of any other rule of court.
Here, judgment in the underlying action giving rise to the fee application was rendered on June 29, 2000, yet the motion for fees was not filed until six months later, on December 19, 2000, and resolved by order on January 11, 2001. We have held in a similar context that applications for counsel fees under N.J.S.A. 2A:15-59.1 must be filed "either before the entry of judgment or `possibly, at the latest, within ten days thereafter by a motion to alter or amend the judgment.'" Venner v. Allstate, supra, 306 N.J.Super. at 113, 703 A.2d 330 (quoting Czura v. Siegel, 296 N.J.Super. 187, 190, 686 A.2d 390 (App.Div.1997)). This reflects the longstanding practice in cases where counsel fees are permitted by statute requiring timely application and inclusion of the attorney-fee award in the final judgment. R. 4:42-9(d) ("[a]n allowance of fees made on the determination of a matter shall be included in the judgment or order stating the determination.") See also Ricci v. Corporate Express of the East, Inc., 344 N.J.Super. 39, 46-47, 779 A.2d 1114 (App.Div.2001).
In this case the application to the trial judge was long overdue. In fact, the belated fee request followed only after defendants' post-judgment legal maneuvers, which included their failure to provide answers to plaintiff's information subpoena. Given this sequence, it seems that the instant fee application was motivated more out of frustration over defendants' attempts to thwart plaintiff's enforcement efforts after trial than the perceived nature of the defenses that defendants advanced at trial. Since plaintiff did not make its application for the award of attorneys' fees in a timely manner, under either the statute or rule, its application should have been denied.
Plaintiff's application should also have been denied because plaintiff failed to afford defendants the "window of opportunity" to withdraw the "frivolous action" provided for in R. 1:4-8(b)(1). Cf. Venner v. *452 Allstate, supra, 306 N.J.Super. at 112, 703 A.2d 330. Subparagraph (b)(1) of R. 1:4-8 conditions the application for frivolous-proceeding attorney-fee sanction "on the moving party's having given the adverse party, by specific and detailed notice, the opportunity to withdraw the assertedly offending pleadings or motion ..." Pressler, N.J. Court Rules, comment on R. 1:4-8(b)(2002). Since no such notice was given in this case, plaintiff's application, when properly considered under the governing standards of R. 1:4-8, should have been rejected on this ground alone.
We also note that, whether adjudged under the rule or statute, the trial court failed to advance any reasons for finding the defenses frivolous in this case. We need not speculate as to its rationale, however, because we deem plaintiff's failure to abide by the procedural requirements of R. 1:4-8 fatal to its application for attorney-fee sanction relief. We simply note that although the standard in this case is that under the rule, the term "frivolous" has been accorded a restrictive interpretation under the frivolous-lawsuit statute, McKeown-Brand v. Trump Castle Hotel & Casino, supra, 132 N.J. at 561-63, 626 A.2d 425, where the term has been limited to claims or defenses made in bad faith, solely for the purpose of harassment, delay or malicious injury, or without any reasonable basis in law or equity. N.J.S.A. 2A:15-59.1(b)(1) and (2). See also Belfer v. Merling, 322 N.J.Super. 124, 143-45, 730 A.2d 434 (App.Div.1999); Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 85-86, 628 A.2d 793 (App.Div.1993).
Finally, assuming plaintiff's application was properly made in conformance with the procedures prescribed in R. 1:4-8 and there was some basis for an award of additional counsel fees, the trial court's allowance for continuing fees beyond the $2249 actually awarded was improper. The $2249 amount represents the difference between the contractual twenty-five percent collection fee originally awarded by the court ($1086) and the total amount of attorney's fees generated at the hourly rate of $145 through May 1996. However, any contemplated attorney's fees generated beyond the entry of judgment, which would represent compensation for services not yet rendered, including charges for post-judgment enforcement motion practice, and appellate practice outside the fee jurisdiction of the trial court, R. 2:11-4, would be improper.
Judgment in the amount of $5187.32 entered on June 29, 2000, is affirmed. The order of January 11, 2001, awarding additional counsel fees of $2249 and continuing counsel fees upon application, is reversed and vacated.