NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2198-14T1

BOUND BROOK BOARD OF
EDUCATION,

    Plaintiff-Respondent,

v.

GLENN CIRIPOMPA,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 29, 2015

APPELLATE DIVISION

Argued April 27, 2015 — Decided October 29, 2015

Before Judges Sabatino, Simonelli and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-12067-14.

Arnold M. Mellk argued the cause for appellant (Mellk O'Neill, attorneys; Mr. Mellk, of counsel; Gidian R. Mellk and Edward A. Cridge, on the briefs).

Robert J. Merryman argued the cause for respondent (Apruzzese, McDermott, Mastro & Murphy, P.C., attorneys; Mr. Merryman, on the brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

This appeal concerns a teacher-tenure arbitration conducted pursuant to Tenure Employees Hearing Law (TEHL), N.J.S.A. 18A:6-10 to -18.1. Appellant Glenn Ciripompa is a tenured high school math teacher in the Bound Brook School District (District) who faced dismissal based on two charges of unbecoming conduct. The first charge involved his improper use of a District-provided laptop and iPad to send and receive numerous sexually explicit emails and nude photographs of women and himself via the Internet in violation of the District's computer and Internet-use policy. The second charge involved his unprofessional, inappropriate and potentially harassing conduct toward four female staff members. The arbitrator determined that the District proved the first charge but not the second charge. The arbitrator modified the penalty from dismissal to a 120-day suspension without pay.

The Bound Brook Board of Education (Board) then filed an action in the Chancery Division challenging the arbitrator's award. In a January 8, 2015 order, the court vacated the award and remanded for a new arbitration hearing before a different arbitrator. We reverse the vacatur of the arbitration award and reinstate the award. We also reject Ciripompa's argument that

the court lacked authority to order a rehearing before a different arbitrator beyond forty-five days of the first arbitration hearing date.

We begin with a brief review of the relevant authority. Under the TEHL, no tenured teacher shall be dismissed for unbecoming conduct without a hearing after written charges have been certified against the teacher. N.J.S.A. 18A:6-10. Any charge made against a tenured teacher must be filed in writing with the secretary of the employing board of education, and a written statement of evidence under oath to support such charge must be presented to the board. N.J.S.A. 18A:6-11. The board must provide the teacher with a copy of the charges and statement of evidence and afford the teacher an opportunity to submit a written statement. Ibid.

The board must then determine by a majority vote of its full membership whether there is probable cause to credit the evidence in support of the charge and whether such charge, if credited, is sufficient to warrant a dismissal. Ibid. If the board so determines, it must notify the teacher and forward the written charge to the Commissioner of Education (Commissioner) for a hearing pursuant to N.J.S.A. 18A:6-16, together with a certification of such determination. Ibid.

If the Commissioner determines the charge is sufficient to warrant dismissal, he shall refer the case to an arbitrator pursuant to N.J.S.A. 18A:6-17.1 for a hearing. N.J.S.A. 18A:6-16. Upon referral, the board must provide all evidence on which it intends to rely at the arbitration hearing and will be precluded from presenting any additional evidence, except for purposes of impeachment of witnesses. N.J.S.A. 18A:6-17.1(b)(3). The teacher must provide all evidence on which he or she intends to rely at least ten days prior to the hearing and will be precluded from presenting any additional evidence, except for purposes of impeachment of witnesses. Ibid.

The arbitration hearing must be held within forty-five days of the assignment of the arbitrator to the case. N.J.S.A. 18A:6-17.1(b)(1). The arbitrator must render a written decision within forty-five days of the first hearing date. N.J.S.A. 18A:6-17.1(d). All of the timelines set forth in N.J.S.A. 18A:6-17.1 "shall be strictly followed[.]" N.J.S.A. 18A:6-17.1(f).

The arbitration is conducted under the labor arbitration rules of the American Arbitration Association (AAA). N.J.S.A. 18A:6-17.1(c). Under AAA Labor Arbitration Rule 27, the arbitrator is not bound by the rules of evidence and may determine the admissibility, relevance, and materiality of the

evidence offered and exclude evidence deemed to be cumulative or irrelevant. However, the arbitrator must consider evidence that is pertinent and material to the controversy. <u>Manchester Twp. Bd. of Educ. v. Thomas P. Carney, Inc.</u>, 199 <u>N.J. Super.</u> 266, 274 (App. Div. 1985).

The arbitrator's determination is final and binding, is not appealable to the Commissioner or State Board of Education, but is subject to judicial review and enforcement pursuant to <u>N.J.S.A.</u> 2A:24-7 to -10. <u>N.J.S.A.</u> 18A:6-17.1(e). It is well-settled that "[a]rbitration awards are favored by the courts and are generally presumed to be valid." <u>Local No. 153, Office & Prof'l Emps. Int'l. Union, AFL-CIO v. The Trust Co. of N.J.</u>, 105 <u>N.J.</u> 442, 448 (1987). Accordingly, judicial review of an arbitration award is very limited. <u>Linden Bd. of Educ. v. Linden Educ. Ass'n</u>, 202 <u>N.J.</u> 268, 276 (2010). The court may vacate an arbitration award in the following instances:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

"Additionally, 'a court may vacate an award if it is contrary to existing law or public policy.'" Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190, 202 (2013) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)). "However, '[r]eflecting the narrowness of the public policy exception, that standard for vacation will be met only in rare circumstances.'" Ibid. (quoting N.J. Tpk. Auth., supra, 190 N.J. at 294).

In reviewing an arbitration award, the court may not substitute its own judgment for that of the arbitrator. Id. at 201; Linden Bd. of Educ., supra, 202 N.J. at 277. When the arbitration is compelled by statute, "judicial review should extend to consideration of whether the award is supported by substantial credible evidence present in the record." Amalgamated Transit Union v. Mercer City Improvement Auth., 76 N.J. 245, 254 (1978).

In this case, the court vacated the arbitration award as procured by undue means pursuant to N.J.S.A. 2A:24-8(a) based on the arbitrator's alleged erroneous evidentiary rulings and dismissal of the second charge. We review the court's decision

on a motion to vacate an arbitration award de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013).

The following facts are germane to our review. The matter began when the District's superintendent received a copy of "Twitter" posts, which stated that a Bound Brook High School teacher, identified as "Mr. C.," was transmitting nude photographs of himself via the Internet. The "Twitter" posts prompted the superintendent to search the electronic system with respect to Ciripompa. The search revealed that Ciripompa used his District-provided laptop and iPad, sometimes during working hours and on District property, to send and receive numerous sexually explicit emails and nude photographs of women and himself. None of those emails was exchanged with or shown to students or school staff. Separately, the superintendent learned of Ciripompa's inappropriate and potentially sexually harassing conduct toward four female staff members in the high school.

In July 2014, the Board instituted the two previously mentioned tenure charges against Ciripompa, seeking his dismissal for unbecoming conduct. The Board certified the charges, suspended Ciripompa, and forwarded the charges to the Commissioner. On July 23, 2014, the Commissioner referred the charges for arbitration.

On August 8, 2014, a month before the scheduled arbitration hearing, the Board submitted the "Twitter" posts for admission during the arbitration hearing. The arbitrator excluded this evidence as untimely under N.J.S.A. 18A:6-17.1(b)(3), but permitted the Board to reference that this evidence prompted the District's investigation of Ciripompa, and to use this evidence in rebuttal. In his written arbitration award the arbitrator acknowledged that the content of the "Twitter" posts indicating that a Bound Brook high school teacher was sending nude photos of himself "was 100% accurate."

Ciripompa did not dispute the two tenure charges or any of the evidence the Board presented supporting the charges. Instead, over the Board's objection, he presented the testimony of an expert psychiatrist in mitigation. The psychiatrist opined that Ciripompa presented no sexual or other threat to his students or members of the school community, he never engaged in any aberrant sexual activity, and he demonstrated poor judgment in using school equipment to pursue his own personal activities. The expert expressed his belief that Ciripompa understood his lapse in judgment and was completely aware of the implications of his actions, and that once this matter was resolved, Ciripompa would not engage in similar conduct. The expert also

believed that suspension and possible dismissal appeared to be an excessive response to Ciripompa's actions.

In his written award, the arbitrator concluded the Board proved the first tenure charge. However, the arbitrator found that: the inappropriate communications involved consenting adults, not students or staff members; all of the inappropriate communications, except four, were not sent or received during work hours or on District property; none of the four inappropriate communications caused any harm apart from a violation of the District's computer and Internet-use policy; and there was no evidence that any students saw or could have seen the inappropriate communications.

The arbitrator also concluded the Board did not prove the second tenure charge. Although the arbitrator found that Ciripompa's conduct toward female coworkers was both inappropriate and violated the District's sexual harassment policy, he concluded the Board failed to establish the conduct created a hostile work environment under the standards set forth in Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (1993), a case on which both parties relied. The arbitrator found the evidence was insufficient to prove that Ciripompa's conduct was sufficiently severe or pervasive to alter the conditions of employment of the four female staff members and create a hostile

working environment. The arbitrator emphasized that the subjective feelings of the female staff workers and Ciripompa's violation of the District's sexual harassment policy were insufficient to establish hostile work environment sexual harassment. Accordingly, the arbitrator dismissed the second tenure charge with prejudice.

The arbitrator then considered the penalty for the first charge. The arbitrator noted that Ciripompa's "conduct cumulatively amounted to a shocking abdication of his professional responsibility raising bad judgment to an art form" and that Ciripompa "expressed no remorse for his actions[.]" However, based on the totality of the circumstances, the arbitrator determined that Ciripompa could be returned to the classroom without harm or an injurious effect on the proper administration of the District. Applying the principles of progressive discipline, the arbitrator found that Ciripompa had no prior disciplinary infractions, was "by all indications a satisfactory teacher[,]" and had no prior warning about misuse of the computer system. The arbitrator also mentioned, but did not rely on, the testimony of Ciripompa's expert that Ciripompa understood his lapse in judgment, was extremely unlikely to engage in similar behavior, and had no evidence of psychopathology.

The arbitrator concluded that the Board failed to justify Ciripompa's dismissal from his tenured position, the totality of the circumstances militated against such a result, and there was no authority supporting the penalty of dismissal under the circumstances of this case. Accordingly, the arbitrator modified the penalty from dismissal to a 120-day suspension without pay.

The Board filed a complaint in the Chancery Division, seeking an order vacating the arbitration award. The Board argued, in relevant part, that the award was procured by undue means under N.J.S.A. 2A:24-8(a) based on the arbitrator's mistakes of fact and law in changing the nature of and standard of proof for the second tenure charge, excluding the "Twitter" posts, and admitting Ciripompa's expert evidence.

In a January 8, 2015 order and written opinion, the trial judge vacated the arbitration award pursuant to N.J.S.A. 2A:24-8(a) and ordered a new hearing before a different arbitrator. The judge found that the "Twitter" posts were pertinent and material to the controversy and that the arbitrator erred in excluding them from evidence. The judge also found that the arbitrator erroneously admitted and relied on Ciripompa's expert, who rendered a net opinion; changed the nature of the

second tenure charge; and applied the wrong standard of proof to the second charge.

On appeal, Ciripompa does not challenge the arbitrator's findings on the two tenure charges or the modified penalty. Instead, he contends that the judge erred in vacating the arbitrator's award or, alternatively, lacked authority to remand for a new hearing before a different arbitrator. While we do not condone Ciripompa's conduct, the question before us is whether the arbitration award was procured by undue means.

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Office of Emp. Relations. v. Commc'ns Workers of Am., 154 N.J. 98, 111 (1998). However, to constitute undue means, "[t]he judicial inquiry must consider more than whether a mere mistake occurred." Minkowitz, supra, 433 N.J. Super. at 150. Rather, the

> formulation requires that the arbitrator[] must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award. In addition, the error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.
>
> [Id. at 150-51 (alteration in original) (citation and internal quotation marks omitted).]

"'Undue means' . . . does not include situations . . . where the arbitrator bases his decision on one party's version of the facts, finding that version to be credible." Local No. 153, Office of Prof'l Emps. Int'l Union, AFL-CIO, supra, 105 N.J. at 450 n. 1.

We discern no mistake of fact or law or mistake that is apparent on the face of the record regarding the arbitrator's exclusion of the "Twitter" posts. Although the arbitrator excluded the actual posts from evidence, he permitted the Board to reference that the posts prompted the District's investigation of Ciripompa and to use the posts in rebuttal. Ciripompa did not contest that the Board learned of his conduct as a result of the posts, and a review of the content of the posts does not demonstrate that they would have changed the outcome of the arbitration. The posts merely stated that a Bound Brook High School teacher, identified as "Mr. C.," was transmitting nude photographs of himself via the Internet, and the arbitrator found that this statement was "100% accurate." Accordingly, because this evidence was not pertinent and material to the controversy, there was no error in its exclusion.

Even if the "Twitter" posts were pertinent and material to the controversy, their exclusion was harmless. Under the

A-2198-14T1

harmless error doctrine, "[a]ny error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result[.]"  R. 2:10-2. Because the arbitrator found in the Board's favor on the first tenure charge, the exclusion of the "Twitter" posts did not produce an unjust result.

There was no mistake of fact or law or mistake that is apparent on the face of the record regarding admission of the expert evidence.  The arbitration was governed by the AAA labor arbitration rules, not the rules of evidence.  Under AAA Labor Arbitration Rule 27, the arbitrator had the discretion to determine the admissibility, relevance, and materiality of the evidence offered.  The admission of this evidence did not warrant vacatur of the arbitration award.

Nor was there a mistake of fact or law or mistake that is apparent on the face of the record regarding the arbitrator's application of the hostile work environment standard in Lehmann. Lehmann has been applied in teacher-tenure unbecoming conduct cases grounded on sexual harassment.  For example, in In re Tenure Hearing of Paul Ash, 96 N.J.A.R.2d 442 (Dep't of Educ.), the teacher was charged with "conduct unbecoming a tenured teacher, specifically . . . sexual harassment of a coworker[.]" Ibid.   In  evaluating  the  merits  of  this  charge,  the

Administrative Law Judge (ALJ) relied on <u>Lehmann</u> and concluded that the charge was supported because the teacher's conduct created a hostile work environment. <u>Ibid.</u>

Similarly, in <u>In re Tenure Hearing of Wayne Slaughter</u>, EDU 6140-01, initial decision (May 21, 2002), http:// lawlibrary.rutgers.edu/oal/search.html>., the teacher was charged with "conduct unbecoming a teaching staff member where he made comments of a sexual nature to students." The ALJ relied on <u>Lehmann</u> to ascertain whether the teacher's conduct met the definition of sexual harassment. <u>Id.</u> at 27-28. The ALJ then sustained the tenure charge after concluding the teacher's "words, actions and conduct were so severe or pervasive to cause [a student] to believe that the school setting was a hostile or abusive environment." <u>Id.</u> at 28. Thus, it is clear that when a teacher was found to have engaged in sexual harassment under the <u>Lehmann</u> test, this was sufficient to sustain an unbecoming conduct charge. <u>See, e.g.</u>, <u>In re Tenure Hearing of Robert Mantone</u>, 93 <u>N.J.A.R.</u>2d 322 (Dep't of Educ.).

Although the second tenure charge against Ciripompa did not specifically state the words "sexual harassment," it alleged that Ciripompa acted inappropriately toward female staff members. Thus, it is clear from the nature of the allegation that sexual harassment was the basis for the charge. Notably,

to prove that charge, the Board relied on <u>Lehmann</u> and the District's sexual harassment policy, which was admitted into evidence. The policy is couched in <u>Lehmann</u> language —— it defines sexual harassment in terms of "conduct [that] is severe and pervasive and has the purpose or effect of unreasonably altering or interfering with work performance or creating an intimidating, hostile, or offensive working environment[.]" <u>See</u> <u>Lehmann</u>, <u>supra</u>, 132 <u>N.J.</u> at 603-04. We are satisfied that the arbitrator properly applied the <u>Lehmann</u> standard of proof to the second charge. The arbitrator also made meticulous findings with respect to the lack of proof for that charge, which the record amply supports.

Finally, we reject Ciripompa's contention that the court may only remand for a new arbitration pursuant to <u>N.J.S.A.</u> 2A:24-8 when an award is vacated within the time period required for the award to be made. Ciripompa argues that because <u>N.J.S.A.</u> 18A:6-17.1(d) required the award in this case to be made within forty-five days of the first hearing date, or by October 20, 2014, the judge could not order a rehearing beyond that date.

Ciripompa misreads the applicable statutes. <u>N.J.S.A.</u> 18A:6-17.1(b)(1) requires the arbitration hearing to be held within forty-five days of assignment of the matter to the

arbitrator.  N.J.S.A. 18A:6-17.1(d) requires the arbitrator to render an award within forty-five days of the first hearing date.  These timelines do not apply to the court's review of an arbitration award.  Once the award has been made, any party may pursue an appeal in accordance with N.J.S.A. 2A:24-7 to -10.  N.J.S.A. 2A:24-8 provides that "[w]hen an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."  Here, there was no "time [limit] within which the agreement required the award to be made," because the arbitration was conducted pursuant to statute, not an agreement between the parties.

In addition, Ciripompa's interpretation of N.J.S.A. 2A:24-8 is inconsistent with the procedures outlined in N.J.S.A. 18A:6-17.1.  Specifically, after the arbitration award is rendered, the parties are thereafter entitled to judicial review of the award and enforcement as provided by N.J.S.A 2A:24-7 to -10.  N.J.S.A. 18A:6-17.1(e).  Ciripompa essentially argues that if judicial review occurs more than forty-five days after the first hearing date, which it virtually always will, the court is powerless to remand the matter if it finds a ground to vacate the award.  This interpretation completely undermines the purpose of affording judicial review of arbitration awards in

teacher-tenure cases, and is contrary to authority granting the court the discretion to remand for an arbitration hearing before a different arbitrator. See In re City of Camden, 429 N.J. Super. 309, 337-38 (App. Div.), certif. denied, 215 N.J. 485 (2013) (permitting a remand to a different arbitrator "when deficiencies in the arbitrator's process call into question the arbitrator's ability to have an open mind regarding the disposition"); see also Fox v. Morris Cnty. Policemen's Ass'n, P.B.A. 151, 266 N.J. Super. 501, 520-21 (App. Div. 1993), certif. denied, 137 N.J. 311 (1994) (holding that upon vacating an arbitration award, the court has the discretion to remand to the same arbitrator or different arbitrator); Manchester Twp. Bd. of Educ., supra, 199 N.J. Super. at 281 (same).

The order vacating the arbitration award is reversed, and the award is reinstated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION