**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4473-16T2

DELAWARE RIVER PORT
AUTHORITY,

  Plaintiff-Appellant/
  Cross-Respondent,

v.

FRATERNAL ORDER OF POLICE
PENN-JERSEY LODGE NO. 30
IN THE MATTER OF EZ-PASS
ARBITRATION,

  Defendant-Respondent/
  Cross-Appellant.

_____

Argued September 18, 2018 – Decided October 3, 2018

Before Judges Hoffman, Suter and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Camden County, Docket No. C-000074-16.

William F. Cook argued the cause for appellant/cross-respondent (Brown & Connery, LLP, attorneys; William F. Cook, on the briefs).

Charles T. Joyce argued the cause for respondent/cross-appellant (Spear Wilderman, PC, attorneys; Charles T. Joyce, on the brief).

PER CURIAM

The Delaware River Port Authority (DRPA) appeals from a May 22, 2017 Chancery Division order confirming an April 26, 2016 supplemental arbitration award in favor of the Fraternal Order of Police Penn-Jersey Lodge No. 30 (FOP), the union representing patrol officers, corporals, and sergeants employed by the DRPA. The FOP cross-appeals from the denial of its application for an award of attorney's fees. For the reasons that follow, we affirm.

The DRPA and the FOP were parties to a collective bargaining agreement (CBA). The CBA expired on December 31, 2009. The parties agreed to a successor CBA with a term of January 1, 2010 to December 31, 2017. Article XXIII of the CBA provides:

> During the period of this Agreement, the DRPA will make available the following items, including any limitations or conditions that now exist:
>
> . . . .
>
> **Section 4.** The allotment of passes for free bridge trips via EZ Pass that was in effect during the prior Collective Bargaining Agreement (that terminated as of December 31, 2004); specifically passes for 100 free bridge trips and 10 free PATCO trips each year.

In July 2010, then-Governor Chris Christie demanded the "immediate" elimination of "all free toll fare perks for employees and retirees" of the DRPA.[1] After the DRPA adopted a resolution to eliminate these benefits, the FOP grieved the elimination of the benefit. The dispute was ultimately submitted to binding arbitration through the American Arbitration Association (AAA).

On January 24, 2011, the arbitrator ruled the DRPA could not unilaterally discontinue the practice of providing the EZ-Pass benefit to FOP members, and ordered it to immediately restore the contractually negotiated benefit, and to reimburse employees "for any verified out-of-pocket expenses" (the 2011 Award). The arbitrator retained jurisdiction regarding the enforcement of the 2011 Award. The DRPA did not seek to vacate or disturb the 2011 Award.

Following the arbitration, the DRPA restored the EZ-Pass benefit to FOP members, but required FOP members to pay a $1 per month service fee for each EZ-Pass account, a fee it had not imposed prior to Governor Christie's directive that free bridge passes be discontinued. The fee is charged by Xerox, an outside entity who administers the EZ-Pass system, and is not charged by the DRPA itself.

The FOP referred the service fee issue back to the arbitrator. The FOP argued its members should not have to pay the service fee in light of the 2011 Award and

---

[1] The demand was made in a letter to the DRPA's Chairperson and Vice-Chairperson. Pennsylvania Governor Rendell issued a similar letter.

sought reimbursement for its members who paid the service fee since August 2010. On October 13, 2015, a hearing was conducted by the same arbitrator who issued the 2011 Award. The parties could not agree on the primary issue to be arbitrated. As a result, the arbitrator framed the issue to be: "Does the [CBA] obligate the [DRPA] to waive the $1.00 per month service fee for EZ Pass trips? If so, what shall be the remedy?" During the hearing, the arbitrator heard testimony from FOP President, Charles Price, and DRPA Manager of Revenue Audit, Patricia Griffey.

Price testified he had served as the FOP President for five years. Before his time at the DRPA and prior to EZ-Pass, Price testified 100 free bridge passes were given to employees; however, by the time he was employed, EZ-Pass was already in place. He also testified about the procedure by which officers signed up for EZ-Pass. Prior to August 2010, officers were required to sign up for an EZ-Pass transponder and indicate how many transponders were needed. If the officer went through any of the EZ-Pass toll lanes, the officer would not be charged for up to 100 bridge crossings. Price testified there was no service fee until after the first round of arbitration and he had not seen the service fee on the officers' billing statements before.

To support his testimony, Price referred to a forwarded email that he had received in May 2011 from DRPA Chief of Police David McClintock, which was

A-4473-16T2

prefaced with the statement "Do not share." The email detailed a discussion between the DRPA's General Counsel, Richard Brown, and several other DRPA officials.[2] Brown's email stated:

> I have recently learned that, prior to August of 2010 we were waiving the [one dollar] Service Fee for E-Z Pass accounts held by those who are eligible for the 100 free trip benefit. My view, after discussing this with John Hanson, is that we should not reinstate this practice. It was not negotiated by the Unions when they sought the free 100 trips, and is unrelated to those trips. If the unions wish to return to arbitration they can attempt to do so.

Counsel for the DRPA objected to its submission, claiming the email was "an attorney/client communication which clearly was intended for attorney/client purposes only." He argued McClintock was not vested with any authority to waive this privilege. Counsel for the FOP argued, even if such privilege attached to the document, McClintock voluntarily waived the privilege by his intentional disclosure of the email thread to Price. The arbitrator admitted the email thread into evidence.

Besides the admitted email, Price conceded neither the 2011 Award nor the DRPA's pre-hearing interest arbitration statement expressly addressed the administrative EZ-Pass fee. Griffey explained Xerox is the entity that actually collects the money received through EZ-Pass and arranges for the issuance of EZ-Pass transponders and Xerox had been doing so prior to 2010. She stated every

---

[2] The other DRPA officials included the DRPA's CEO and CFO.

person who is in the New Jersey EZ-Pass system is charged the monthly account fee by Xerox, whether or not they work at the DRPA. Griffey testified the DRPA had never paid the service charge for anyone and had also never waived the fee. Griffey also noted the monthly fee is an account fee, not a "transponder" fee, meaning if an individual had multiple transponders, that individual would only be charged under a single account.

On April 26, 2016, the arbitrator issued a supplemental award requiring the DRPA to reimburse FOP officers for the monthly service fee retroactive to August 18, 2010, and to continue to pay the administrative fee for the duration of the term of the agreement. The arbitrator determined the DRPA was reimbursing the fee prior to Governor Christie's 2010 directive and, per the prefatory paragraph of Article XXI, Section 4, should be required to reinstate that practice. The arbitrator relied on the polarizing email communication to support this finding. In addressing why he allowed the email into evidence, the arbitrator stated: "I determined that Chief of Police McClintock was communicating with a subordinate, who also happens to be the President of the [FOP] and, therefore, on those grounds, it was allowed in." The arbitrator also found the service fee to be "a verified out-of-pocket expense" and, for that reason, it should also be paid by the DRPA because the CBA obligated the

DRPA to provide the benefit at no cost to the employees. He concluded that assessing the service fee violated the contract and past practice.

The arbitrator rejected the DRPA's claim the grievance was time barred, concluding the DRPA had engaged in a continuing violation by assessing the monthly service fee, with each monthly assessment being a separate violation, citing Alpha Board of Education v. Alpha Education Association, 190 N.J. 34, 43 (2006), which held it inappropriate to apply the strict time limitations in a CBA for the filing of a grievance to an ongoing violation of a contractual right.

The arbitrator also noted the DRPA's final offer during a 2015 interest arbitration included eliminating the EZ-Pass free bridge benefit. The interest arbitrator rejected the proposal to eliminate the free bridge benefit, stating:

> I do not believe that the record supports the proposal. The benefit has been part of FOP members' terms and conditions of employment since the parties['] first bargaining agreement and it has been a part of their overall compensation ever since. The significant economic changes to benefits were wages and healthcare. Having recommended those changes, I believe a new balance has been reached on the economic issues and additional changes are unnecessary.

The DRPA filed this action to vacate the supplemental award and the FOP counterclaimed to confirm the supplemental award and for an award of attorney's fees and costs. Following briefing and oral argument, the Chancery judge issued an

oral decision. She determined she could not justify setting aside the arbitrator's supplemental award, finding the award to be "arguably debatable." The judge also concluded the email was not critical to the arbitrator's findings in light of the arbitrator not accepting Griffey's testimony, which the judge found "speaks volumes." In her ruling, the judge denied the DRPA's application to vacate the supplemental award, dismissed the DRPA's complaint with prejudice, confirmed the supplemental award, required the parties to comply with the award, and denied the FOP's application for attorney's fees and costs. This appeal followed.

The DRPA argues the supplemental award should be vacated and reversed because the arbitrator committed a mistake of law in admitting and relying upon privileged information. It further argues the supplemental award should be vacated and reversed because it creates a new benefit not provided for under the plain language of the contract. In its cross-appeal, the FOP argues that because the DRPA's action to vacate the supplemental award was without justification and had no reasonable chance of success, the FOP should have been awarded attorney's fees and costs.

Our role "in reviewing arbitration awards is extremely limited." State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 513 (2001) (citing Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). We undertake "an

extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011). "Generally, when a court reviews an arbitration award, it does so mindful of the fact that the arbitrator's interpretation of the contract controls." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013).

"An appellate court's review of an arbitrator's interpretation is confined to determining whether the interpretation of the contractual language is reasonably debatable." N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 553-54 (2006) (citations omitted); see also Policemen's Benevolent Ass'n, 205 N.J. at 428-29. "Under the reasonably debatable standard, a court reviewing [a public-sector] arbitration award may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." Borough of E. Rutherford, 213 N.J. at 201-02 (alteration in original) (citations omitted). If the interpretation of the contractual language "is reasonably debatable in the minds of ordinary laymen[,] . . . the reviewing court is bound by the arbitrator's decision." Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 451 (App. Div. 1981).

Consistent with these principles, the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides only four grounds for vacating an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct . . .; [or]
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

A court may also vacate an award if it is contrary to public policy. Borough of E. Rutherford, 213 N.J. at 202 (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)).

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record," whereas an arbitrator exceeds his or her "authority by disregarding the terms of the parties' agreement." Borough of E. Rutherford, 213 N.J. at 203 (alteration in original) (quoting Off. of Emp. Rels. v. Commc'ns Workers of Am., 154 N.J. 98, 111-12 (1998)). Whether the arbitrator exceeded his authority "entails a two-part inquiry: (1) whether the agreement authorized the award, and (2)

whether the arbitrator's action is consistent with applicable law." Id. at 212 (citing Commc'ns Workers of Am., Local 1087 v. Monmouth Cty. Bd. of Soc. Servs., 96 N.J. 442, 451-53 (1984)).

"[A]n arbitrator may not disregard the terms of the parties' agreement, nor may he rewrite the contract for the parties." Cty. Coll. of Morris Staff Ass'n v. Cty. Coll. of Morris, 100 N.J. 383, 391 (1985) (citing State v. State Troopers Fraternal Ass'n of N.J., 91 N.J. 464, 469 (1982)). Moreover, "the arbitrator may not contradict the express language of the contract." Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010). "Thus, our courts have vacated arbitration awards as not reasonably debatable when arbitrators have, for example, added new terms to an agreement or ignored its clear language." Policemen's Benevolent Ass'n, 205 N.J. at 429-30 (citing Cty. Coll. of Morris, 100 N.J. at 397-98).

The party seeking to vacate an arbitration award bears the burden of demonstrating wrongdoing on the part of the arbitrator. Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994); Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). Because a decision to vacate or confirm an arbitration award is a decision of law, we review the denial of a motion to vacate an arbitration award de novo. Minkowitz, 433 N.J. Super. at 136 (quoting Manger v.

11

Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)); see also Bound Brook Bd. of Educ. v. Ciripompa, 442 N.J. Super. 515, 520 (App. Div. 2015).

The DRPA contends that since the free bridge program pre-dated the implementation of EZ-Pass for FOP members, it also pre-dated the existence of the monthly EZ-Pass service fee charged by Xerox, an outside entity. The DRPA further contends the parties never contemplated the Xerox monthly service fee, which is charged to all EZ-Pass account holders, would be borne by the DRPA. The FOP counters the free bridge pass benefit predates the commencement of the EZ-Pass program and the DRPA did not levy a $1 per month service charge on FOP members until Xerox became the DRPA service provider sometime prior to 2010, and even then, waived the service fee for FOP members until August 2010. The FOP further contends the decision not to reimburse the cost of the service fee is contrary to the established past practice, which was to provide the 100 free bridge passes at no cost.

We begin our analysis by noting the issue whether the CBA obligates the DRPA to waive the monthly service fee is primarily contractual, not factual, in nature. While the arbitrator did rely on the email to determine the DRPA previously covered the service fee, the arbitrator also concluded the 2011 Award required the waiver of the service fee, as the fee was an out-of-pocket expense. The Arbitrator did not rely on the email to render this part of his 2016 Award. Moreover, the email

in question was sent to the chief of police, the commanding officer of the DRPA's police department, not a mid or low level employee. But cf. Hedden v. Kean Univ., 434 N.J. Super. 1, 11, 15-16 (App. Div. 2013) (holding mid or low level employee cannot waive the privilege on behalf of a corporation). The chief subsequently provided the email to the FOP's president. The disclosure to the FOP president was knowing and intentional, not inadvertent or accidental. Therefore, the attorney-client privilege in the contents of the email was waived. O'Boyle v. Borough of Longport, 218 N.J. 168, 186 (2014) ("The attorney-client privilege is ordinarily waived when a confidential communication between an attorney and a client is revealed to a third party.").

The DRPA also complains the arbitrator erred by considering hearsay evidence. "[T]he formal Rules of Evidence do not apply in arbitration proceedings." Fox v. Morris Cty. Policemen's Ass'n, 266 N.J. Super. 501, 506 (App. Div. 1993). The CBA provides grievances submitted to the AAA would proceed in accordance with the AAA's rules and regulations. Under the AAA's Labor Arbitration Rules, "[t]he arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered . . . and conformity to legal rules of evidence shall not be necessary." AAA Labor Arb. R. 27. The arbitrator may also receive and consider

A-4473-16T2

the evidence of witnesses by affidavit. AAA Labor Arb, R. 28. Accordingly, the arbitrator was permitted to consider the hearsay evidence.

The DRPA further complains the FOP did not provide discovery of the email until the day of the arbitration hearing. The AAA's Labor Arbitration Rules "do not require that the parties exchange exhibits or otherwise engage in pre-hearing discovery." Paper, Allied-Indus., Chem. & Energy Workers Int'l Union, Local 1-9 v. S.D. Warren Co., 382 F. Supp. 2d 130, 132 (D. Me. 2005). Instead, "[t]hose rules accord only a right to subpoena witnesses and documents for the hearing." Zamora v. Lehman, 111 Cal. Rptr. 3d 335, 347 (Ct. App. 2010) (citing former AAA Labor Arbitration R. 28). Accordingly, the FOP was not under a duty to disclose its intention to utilize the email. Moreover, the DRPA already had knowledge of and access to the email.

"Arbitration is 'a vehicle by which meaning and content are given to the collective bargaining agreement.'" Local No. 153, Office & Prof'l Emps. Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 452 (1987) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960)). "Although the arbitrator may not contradict the express language of the contract, 'it is the arbitrators construction that is bargained for[,]' and '[i]t is the arbitrator's role to fill the gaps[.]'"

14

Linden, 202 N.J. at 276 (alterations in original) (quoting Local No. 153, 105 N.J. at 452).

Here, the arbitrator clarified the language of the CBA in his 2011 Award. That award, which the DRPA did not attempt to vacate, is binding and must be applied to subsequent grievances. In making the supplemental award, the arbitrator properly relied upon the earlier award. We conclude it is reasonably debatable whether the service charge constitutes an out-of-pocket expense that the DRPA is responsible for in light of the 2011 Award. Accordingly, the award must be confirmed.

We next address the denial of the FOP's application for an award of attorney's fees and costs. The FOP argues it was error to deny an award of attorney's fees and costs because the DRPA's action to vacate the supplemental award was without justification and had no reasonable chance of success. Ostensibly, the FOP claims the DRPA's appeal was frivolous. We are unpersuaded by this argument.

Initially, we note the arbitrator also denied the FOP's request for an award of attorney's fees and costs. The FOP did not seek to vacate that aspect of the supplemental award in its counterclaim to confirm the award. Nor did the FOP comply with the mandatory procedural requirements imposed by Rule 1:4-8(b)(1) for an award of fees and costs for frivolous litigation. See Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 406-07 (App. Div. 2001). Failure to comply

15                                                                    A-4473-16T2

with the notice requirements imposed by the rule bars an award of frivolous litigation fees and costs. Id. at 406.

We further note the FOP is not entitled to an award of attorney's fees under the terms of the CBA or any other court rule or statute. Therefore, the FOP must bear the cost of its own attorney's fees. The application for an award of attorney's fees was properly denied. See R. 4:42-9(a); Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:42-9 (2019).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4473-16T2